UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| QUINTEN M. MORAN<br>    LA. DOC #465482<br>VS. | CIVIL ACTION NO. 3:14-cv-0829<br><br>SECTION P<br><br>JUDGE ROBERT G. JAMES |
| ANTONIO JOHNSON, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Quinten M. Moran filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on April 16, 2014. [Doc. 1]  Plaintiff is a prisoner in the custody of Louisiana's Department of Corrections. When he filed his complaint he was incarcerated at the Southern /Madison Parish Corrections Center, Tallulah, Louisiana, and he complained that prison administrators interfered with his practice of religion; that he was denied proper access to the Courts; that he has been denied the opportunity to participate in educational and rehabilitation programs; and, that he was denied sufficient outdoor recreation opportunities.  He sued Warden Johnson, Madison Parish Sheriff Larry Cox and Corrections Officers Brooks and Sims praying for declaratory judgment, injunctive relief, and compensatory and punitive damages. On June 20, 2014 plaintiff filed an amended complaint and application to proceed in *forma pauperis* [Docs. 8,9, and 10] which indicated that he had been transferred to the Claiborne Parish Detention Center.  On June 24, 2014 his motion to proceed *in forma pauperis* was granted. [Doc. 12] On August 5, 2014 plaintiff filed a "Motion to Serve" the defendants. [Doc. 13]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the

following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Statement of the Case*

On February 1, 2008, plaintiff pled guilty to charges of armed robbery and attempted armed robbery and on the same day he was sentenced by the Twenty-Fourth Judicial District Court, Jefferson Parish to serve 25 years in the custody of the Louisiana Department of Corrections. He appealed to the Louisiana Fifth Circuit Court of Appeals arguing a single assignment of error – that the trial court failed to advise him of the 2 year period of limitation for filing post-conviction relief. On November 12, 2008, the Fifth Circuit affirmed his convictions and sentences having determined that the plea form executed by plaintiff advised him of the prescriptive period in question. *State of Louisiana v. Quinten Moran*, 2008-462 (La. App. 5 Cir. 11/12/2008), 1 So.3d 545.

Plaintiff was confined at the Southern /Madison Parish Corrections Center in Tallulah, Louisiana on July 22, 2008. [Doc. 1, p. 5] In either June or July 2009, plaintiff filed a grievance against Sgt. Guise of the Madison Parish Corrections Center alleging that plaintiff was denied a meaningful opportunity to do research in the law library and therefore he was unable to properly litigate his post-conviction claims. Thereafter, plaintiff was allowed access to the law library sporadically. [Doc. 8] More than three years later, on December 21, 2012, to be exact, he filed an application for post-conviction relief in the District Court arguing claims of ineffective assistance of counsel, denial of the right of access to the Courts, and invalid guilty plea. The application was denied by the District Court, the Court of Appeals, and ultimately by the Louisiana Supreme Court as untimely. [*See Quinten Moran v. Warden*, Civil Action No. 5:14-cv-

0921 at Doc. 1, ¶ 12; see also *State of Louisiana ex rel. Quniten Moran v. State of Louisiana*, 2013-1614 (La. 1/17/2014), 130 So.3d 943.]

On August 30, 2010, plaintiff was licensed and ordained by the United Christian Church and Ministerial Association to the office of pastor. [Doc. 1, p. 3; see also *Moran v. Warden*, Civil Action No. 5:14-cv-0921 at Doc. 1-2, p. 2]

On May 8, 2013, Warden Johnson posted a Memo to all prisoners stating, "Effective 1/June/2013: Due to high level of contraband, there will be CHURCH SERVICES on Sundays only." [Doc. 8, p. 13] On May 19, 2013, plaintiff and other inmates submitted a grievance to Sheriff Cox. Therein plaintiff stated, "... although I'm aware of the 'high level of contraband' here... and am personally disgruntled by the same, I do not believe that minimizing the church services is either the proper or most effective course of action to take in attempting to remedy this matter." Plaintiff concluded his grievance by asking that the policy be rescinded. [Doc. 8, pp. 10-12] Thereafter, on June 3, 2013, plaintiff submitted an emergency grievance to the Department of Corrections Headquarters. He requested that the policy be rescinded and that he be transferred to another facility. [Doc. 8, pp. 14-15]

On March 4, 2013, plaintiff submitted a grievance to the Department of Corrections Headquarters stating, "I've attempted since 2009 to gain relief from the failure of the administrators here to provide meaningful access to the prison's law library to properly litigate my criminal case as I pursue post-conviction relief." [Doc. 8, pp. 7-8]

On April 14, 2013 plaintiff submitted a grievance to the Department of Corrections Headquarters in which he stated, "... I'm currently pursuing post-conviction relief [at] the 5th Circuit Court of Appeal and am desperately in need of access to the law library. I have

3

continuously been denied by Lt. Robert Sims' shift an opportunity to go to the law library to properly litigate my case, and I'm continuously being denied as of today... I've been denied my post-conviction relief with the District Court due to this facility's denying me a meaningful opportunity to litigate my case. I've been grieving this issue since 2009 without any form of resolution." [Doc. 8, p. 9]

On April 30, 2014, plaintiff filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 in this court. (When he filed this petition he was incarcerated at the Jackson Parish Corrections Center, Homer, Louisiana.) On May 22, 2014, the petition was transferred to the United States District Court for the Eastern District of Louisiana since plaintiff was convicted in Jefferson Parish. *See Quinten Moran v. Warden Timmy Ducote*, Civil Action No. 5:14-cv-0921 (LAWD). The matter remains pending as of the date of this Report. *See Moran v. Warden*, Civil Action No. 2:14-cv-1210 (LAED).

On June 13, 2013, plaintiff's wife, Eunice Simone Moran, was prohibited from sending plaintiff printed copies of federal *habeas corpus* cases gleaned from Lexus which are not available from the prison's law library. [Doc. 8, p. 16]

In his original complaint plaintiff alleged that the curtailing of his rights to freely practice his religion resulted in "an increase in stress and tension which resulted in plaintiff becoming depressed and experiencing rapid weight loss." [Doc. 1, p. 3] He also claimed that his confinement at Southern/Madison Parish Corrections Center deprived him of access to educational and training opportunities afforded to inmates with 3 years or less remaining on their sentences. Further, he complained that his outdoor recreational activity was limited to 3 or 4 hours per month resulting in stress, tension, the risk of contracting communicable diseases, and

increased confrontations with other prisoner. [Doc. 1, p. 5]

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Practice of Religion*

Plaintiff, an ordained minister, complained that Southern/Madison Parish Corrections Center's new policy limiting congregational church services to Sundays only, violated his right to freely practice his religion.

Inmates clearly retain protections afforded by the First Amendment, including its

5

directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff claims that his right to participate in midweek religious services was curtailed by Warden Johnson's May 8, 2013 Memo to all prisoners which stated, "Effective 1/June/2013: Due

to high level of contraband, there will be CHURCH SERVICES on Sundays only." [Doc. 8, p. 13] As noted above, plaintiff and other inmates submitted a grievance to Sheriff Cox which stated, "... although I'm aware of the 'high level of contraband' here... and am personally disgruntled by the same, I do not believe that minimizing the church services is either the proper or most effective course of action to take in attempting to remedy this matter."

It must be noted, that with regard to the first prong of the *Turner* test, plaintiff has not alleged that prison officials have prohibited him from practicing his religion. Indeed, according to the available evidence, plaintiff has never been prohibited from practicing his religion. Instead, prison administrators merely abolished midweek services. There was no curtailment of Sunday worship. As previously noted, the second and forth prongs of the *Turner* test, address whether or not "alternative means" of practicing his religion have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). Plaintiff has not claimed that he was denied the right to exercise his faith; indeed his only complaint is that congregational services have been limited to Sunday only.

In *O'Lone v. Estate of Shabazz, supra*., the inmate-plaintiffs complained that they were not allowed to attend the weekly *Jumah* services because of their assignments to work details outside the main prison grounds. *O'Lone v. Estate of Shabazz*, 482 U.S. at 345-46. The Supreme Court considered the evidence supplied by the prison administration regarding security needs,

rehabilitative needs, and the impact of alternative accommodations; this evidence was evaluated in the light of those rights actually retained by the inmates to practice their religion. The Court then noted that the plaintiff-inmates were not deprived of <u>all</u> forms of religious exercise. Based upon these facts, the Supreme Court held that the "ability on the part of [the inmates] to participate in <u>other religious observances</u> of their faith supports the conclusion that the restrictions at issue here were reasonable." *Id.* at 352. Plaintiff is again reminded, prison administrators are obliged only to provide inmates with "reasonable <u>opportunities</u> ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments." *Id.* at 322 n. 2, 92 S.Ct. 1079.

Further, plaintiff, in his grievance to the Sheriff, conceded (albeit reluctantly) that there was a valid penological reason for the Warden's restriction, namely, limiting opportunities for the entry of contraband into the institution. In short, plaintiff's First Amendment claim is frivolous.

Liberally construed, and giving plaintiff the benefit of the doubt, it may be assumed that he also intended to allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) [see 42 U.S.C. §2000cc *et seq*.]. RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a <u>substantial burden</u> on the exercise of his religion. If the prisoner carries his or her burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action. Under RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. §* 2000cc-5(7)(A). Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

As noted above, the complained of regulation does not place a substantial burden on plaintiff's right to exercise his religion; further, and by his own admission, the regulation is intended to address a compelling governmental interest.

Plaintiff has not demonstrated either a First Amendment violation or the violation of RLUIPA and therefore his complaint should be dismissed as frivolous.

*3. Access to Court*

Plaintiff also complained that he was denied free access to the prison law library which ultimately resulted in the dismissal of his application for post-conviction relief as untimely. By way of these allegations, plaintiff implies that he was denied his constitutionally protected right of access to the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). Here plaintiff alleges no facts to establish that his ability to prepare and transmit legal documents to the Court were in any way hampered.

Nevertheless, in order for him to state a claim that he was denied his constitutional right of access to the courts, even if he can show some interference, he must also "demonstrate[ ] that his position as a litigant was <u>prejudiced</u> by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "<u>actual injury</u>" is "not satisfied by

just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.

In other words, plaintiff, at the very least, must show that he was prevented from filing a non-frivolous pleading. Plaintiff claims that his sporadic access to the law library resulted in the filing of an untimely application for post-conviction relief. That claim is clearly not supported by the facts. As shown above, and as found by the Fifth Circuit Court of Appeals, plaintiff was made aware of the 2 year period of limitations at the time of his plea. He therefore knew that his application needed to be filed within two years of the date that his judgment of conviction became final by the conclusion of his appeal and therefore must have been aware of the deadline for filing.

Under Louisiana law, applications for post-conviction relief must be presented on the forms provided by the Louisiana Supreme Court. See Louisiana Supreme Court Rules, Appendix "A" – Uniform Application for Post-Conviction Relief. The instructions on the form clearly advise post-conviction litigants, "No citation of authorities or legal arguments are necessary." The form also instructs, "State concisely facts supporting your claim that you are being held unlawfully. If necessary, you may attach extra pages stating additional claims and supporting facts. Do not argue points of law... Remember that you must state the FACTS upon which your complaints about your conviction are based." See Appendix "A".

In other words, plaintiff was presumably aware of the FACTS supporting his application and was capable of articulating those facts on the form provided to him and other inmates by the Louisiana Supreme Court. That he failed to do so in a timely manner cannot reasonably be attributed to his sporadic access to the prison law library.

Likewise, it is unclear how he can demonstrate prejudice by the refusal of prison

administrators to allow him access to the printed federal cases prepared by his spouse on June 13, 2013. It appears that plaintiff was able to present his habeas corpus pleadings to the federal courts. In other words, plaintiff's access to courts claim is also frivolous.

### *4. Rehabilitation Programs*

Plaintiff contends that he is entitled to participate in educational and vocational programs during the period of his incarceration. Plaintiff mistakenly assumes that he has a Constitutional right to participate in such rehabilitation programs. Inmates do not a have a protected property or liberty interest in rehabilitation programs. *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir.1989) ; *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988). Nor do prisoners have a constitutional right to participate in drug treatment programs. *See Moody v. Doggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (Prisoner classification and eligibility for rehabilitation programs are not subject to "due process" protections). The "state has no constitutional obligation to provide basic educational or vocational training to prisoners." *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988). Thus, plaintiff's complaint, insofar as it asserts the existence of a constitutional right to rehabilitation programs is also frivolous.

### *5. Outdoor Recreation*

Plaintiff's claim that he is denied sufficient outdoor recreation likewise fails to state a claim for which relief may be granted. With regard to this claim, plaintiff claimed that he experienced stress and tension, but otherwise he has failed to allege any physical injury resulting from the lack of outdoor recreation. His claim is therefore barred by the provisions of 42 U.S.C. §1997e(e) which provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody

without a prior showing of physical injury."

Finally, and more to the point, prisoners have no absolute constitutional right to outdoor recreation, so long as some form of exercise is permitted, or, the conditions of confinement, when viewed as a whole, are not violative of the Eighth Amendment. *See Callicutt v. Panola County Jail*, 200 F.3d 816 (5th Cir. 1999)(unpublished), citing, *Jones v. Diamond*, 594 F.2d 997, 1012-13 (5th Cir.1979); *see also Scott v. Gusman*, Civil Action No. 10-2706 (E.D.La., February 14, 2011)*,* 2011 WL 666851 (Even if a prisoner is allowed outside for only 45 minutes, twice a week, that "... is not an atypical, significant deprivation in a prison setting, and it does not rise to the level of a constitutional violation. *See Argue v. Hofmeyer*, 80 Fed. App'x 427, 429 (6th Cir.2003); *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir.2003); *Figueroa v. Dinitto*, 52 Fed. App'x 522, 523 (1 st Cir.2002); *Smith v. Romer*, No. 96-1211, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997); *Smith v. Beatty*, No. 95-1493, 1996 WL 166270, at *1 (7th Cir. Apr. 5, 1996). Even severe restrictions on or complete denials of outdoor recreation have been found to be constitutional. *See, e.g., Chavis v. Fairman*, No. 92-C-7490, 1994 WL 55719, at *5 (N.D.Ill. Feb. 22, 1994) ('Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity.'), aff'd, 51 F.3d 275 (7th Cir.1995); *Rue v. Gusman*, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D.La. May 11, 2010); *Broussard v. Phelps*, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D.La. Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact that he was allowed to leave his cell for an hour each day and cell was large enough for indoor exercise)." Thus, plaintiff's final claim is also frivolous.

*Conclusion and Recommendation*

Therefore, in light of this Recommendation, plaintiff's Motion to Serve [Doc. 13] is **DENIED**; and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, August 13, 2014.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**